IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CONSTANT B. BIDZIMOU,

        Plaintiff,

v.                              Case No. 13-1127-SAC

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES,

        Defendant.

MEMORANDUM AND ORDER

Pursuant to 8 U.S.C. § 1421(c), Plaintiff Constant B. Bidzimou has petitioned for review of the denial of his naturalization application by the Immigration and Naturalization Service (INS). In response, Defendant filed a motion to dismiss, alleging the petition fails to state a claim to relief. Plaintiff has responded. *See* Dks. 11, 14, 15.

**I. Procedural Background**

    **A. Plaintiff's Underlying Criminal Acts**

In September of 2007, Plaintiff sent two faxes with threatening language about its property and personnel to an AT&T office located in Wichita, Kansas. Plaintiff sent additional faxes to two other individuals, threatening them personally and threatening one of their families. Plaintiff was arrested at his home on September 17, 2007, and was charged in Kansas state court with four counts of criminal threat, which are severity level 9 person felonies.

The jury convicted Plaintiff on August 20, 2008 of two of the four counts of criminal threat. Plaintiff was sentenced to 12 months of probation with an underlying sentence of 12 months' incarceration. Plaintiff appealed his conviction and his sentence, but the Kansas Court of Appeals dismissed that appeal.

Plaintiff was incarcerated for over 300 days because of his convictions. From September 17, 2007 to October 16, 2007, Plaintiff served 30 days in Sedgwick County Jail after being arrested for four felony counts of criminal threat and before being released on bond. From April 21, 2008 to June 20, 2008, Plaintiff served 61 days in Sedgwick County Jail before his jury trial began. From October 27, 2009 to December 17, 2009, Plaintiff served 52 days in Sedgwick County Jail after violating the terms of his probation and before being transported to El Dorado Correctional to serve the remainder of his underlying prison sentence. Because Plaintiff had served 91 days in prison prior to his original conviction and 52 days before the Eighteenth Judicial District Court of Kansas in Sedgwick County revoked his parole, the court credited this time served from his underlying twelve-month prison sentence. From December 17, 2009 to February 1, 2010, Plaintiff served 45 days in Sheriff's custody awaiting transport to the El Dorado Correctional Facility. From February 1, 2010 to June 3, 2010, Plaintiff served 122 days in El Dorado Correctional Facility before being released by the Kansas Parole Board.

### B. Plaintiff's INS Application

On February 22, 2012, after having served more than 300 days in penal confinement during the preceding five years, Plaintiff filed his N-400 Application for Naturalization. In it, Plaintiff answered that he had been arrested, charged, and convicted of a crime and acknowledged that he had served time in prison, listing the start dates of his periods of confinement. On July 24, 2012, USCIS denied Plaintiff's N-400 on the basis that he had spent an aggregate of 180 days or more in confinement during the statutory five-year good moral character period. Plaintiff sought review of that denial and appeared at a hearing. On March 4, 2013, USCIS reaffirmed its denial, citing court documents Plaintiff had submitted which showed he had been incarcerated for over 180 days during the good moral character period. USCIS also noted that Plaintiff admitted under oath at his N-336 interview that he had been incarcerated for 180 days or more during the relevant time period. On April 2, 2013, Plaintiff filed a Complaint with this Court seeking *de novo* review of USCIS's denial of his N-400 Application for Naturalization, and Defendant moved to dismiss.

## II. Legal Standards

As part of the Immigration and Naturalization Act (INA), Congress specifically granted jurisdictional authority to the federal district courts to review *de novo* the denial of an application for naturalization. 8 U.S.C. § 1421(c). "This grant of authority is unusual in its scope—rarely does a

district court review an agency decision *de novo* and make its own findings of fact." *Nagahi v. I.N.S.*, 219 F.3d 1166, 1168-1169 (10th Cir. 2000). Because the "Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship," the burden is on the Plaintiff to show his "eligibility for citizenship in every respect." *Berenyi v. INS*, 385 U.S. 630, 637 (1967).

The Federal Rules of Civil Procedure apply to this court's review. *See Chan v. Gantner,* 464 F.3d 289, 295-96 (2d Cir. 2006) (quoting Fed.R.Civ.P. 81(a)(2)) (finding that the mandate of a *de novo* hearing does not preclude the use of summary judgment procedures where the agency denies an application based on a statutory bar to naturalization.) Therefore, the court can dismiss the complaint or grant summary judgment if appropriate.

Defendant has filed a motion to dismiss. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In reviewing the complaint for sufficiency for purposes of a Rule 12(b)(6) motion, the court also considers the attachments to the complaint. *See Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010). Plaintiff has attached numerous documents central to the complaint, so the Court shall consider them. See *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010).

Chief among them are the following: 1) the journal entry of his criminal trial showing the jury convicted him on two of four counts of criminal threat; 2) the journal entry of judgment in that case showing plaintiff was sentenced to 12 months of probation with an underlying sentence of 12 months' incarceration; 3) plaintiff's admission that he was incarcerated for periods totaling over 300 days between September of 2007 and June of 2010. Dk. 1, Exh. A.

### III. Citizenship Requirements

An applicant for citizenship in the United States has the burden of proving that he has satisfied every requirement of citizenship. 8 CFR § 316.2(b). To be eligible for citizenship, an applicant must demonstrate that he: (1) was lawfully admitted to the United States as a permanent resident; (2) has resided continuously, and has been physically present in the United States for the required statutory period; and (3) is a person of good moral character and has been so for at least the five years preceding the filing of his naturalization application. *See* 8 U.S.C. § 1427, 1429; *see also* 8 C.F.R. § 316.2. Plaintiff challenges solely this latter requirement of good moral character.

Congress has statutorily barred seven classes of persons from demonstrating they have good moral character, based on their conduct. *See* 8 U.S.C. § 1101(f)(1)-(9). The statute relevant to Plaintiff's case provides that an applicant will be found not to be of good moral character if, during

the five years before filing for citizenship, he was confined to a penal institution for 180 days or more:

> (f) For the purposes of this chapter--
> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was--
> (7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;

8 U.S.C. § 1101(f)(7). It is undisputed that the "period for which good moral character is required to be established" is the five years immediately preceding the filing of one's naturalization application.

## IV. Plaintiff's Claims

### A. No Competent Evidence to Support the INS Finding

INS determined that because Plaintiff was confined to a penal institution for more than 180 days for his criminal threat convictions during the relevant five-year period, he was ineligible to naturalize pursuant to 8 U.S.C. § 1101(f). This Court has independently reviewed the record, and finds it undisputed that Plaintiff was incarcerated during the following dates: September 17, 2007 – October 16, 2007; April 21, 2008 – June 20, 2008; and October 27, 2009 to June 3, 2010 (*See* Dk. 1, Exh. A9, A39-41, A60). In fact, Plaintiff does not deny that he was incarcerated for an aggregate of 180 days or more. *See* Dk. 1, pp. 10, 11. The period of plaintiff's confinement was thus well over 180 days.

Plaintiff denies that he was convicted, but the record reflects that the above-listed periods of confinement were the result of Plaintiff's convictions for criminal threats. See Dk. 1, Exh. A. It is similarly undisputed that Plaintiff filed his naturalization application on February 22, 2012, rendering his incarcerations during the five years immediately preceding his filing. The Court thus finds that the statutory disqualification of § 1101(f) applies, preventing Plaintiff from establishing good moral character.

**B. No State Conviction**

Plaintiff's primary claim is that despite his incarcerations, he has no criminal conviction, as the statute requires. *See* 8 U.S.C. § 1101(f)(7) (barring one who "has been confined, as a result of conviction, to a penal institution …"). Plaintiff raises multiple conclusory challenges to his state conviction, including the following: he was illegally arrested so was the "victim of kidnapping disguised in prosecution," Dk. 1, p. 3; he was falsely and illegally convicted, sentenced, and imprisoned in state court; he was incarcerated for exercising his constitutional rights; he was kidnapped during the relevant 180 days; and, he was never on probation but was just "under the conditions of Kansas Appellate Courts PreJudgment." Id., p. 11. Plaintiff further asserts that anything regarding his probation is just a lie or a rumor, and that the INS denied him the right to become a naturalized citizen on the basis of a rumor and not on the basis of evidence of record.

These and similar arguments made by the Plaintiff constitute a collaterally attack on his state criminal convictions and sentence. But just as a petitioner cannot collaterally attack the legitimacy of his state criminal convictions in a deportation proceeding, *see Abiodun v. Gonzalas*, 461 F.3d 1210, 1217 (10th Cir. 2006); *Trench v. INS,* 783 F.2d 181, 183 (10th Cir. 1986), the Plaintiff cannot collaterally attack his state criminal convictions in this citizenship proceeding. *See generally Singh v. Holder*, 568 F.3d 525, 528 (5th Cir. 2009). *See also Olivera-Garcia v. INS,* 328 F.3d 1083, 1086 (9th Cir. 2003) (criminal conviction cannot be reviewed in immigration proceeding). Cf, *Contreras v. Schiltgen,* 151 F.3d 906 (9th Cir. 1998) ("When the federal proceeding is governed by statutes that limit inquiry to the fact of conviction, there can be no collateral review of the validity of the underlying conviction except for *Gideon* claims."). Nor is Plaintiff's appeal a petition for habeas corpus review. *See* 28 USC § 2254, 2241. These claims challenging Plaintiff's underlying criminal convictions and sentence are thus not facially plausible in this proceeding.

**C. Due Process**

Plaintiff additionally contends that the statutory bar to his establishing good moral character is unreasonable and an incorrect application of the law. Plaintiff contends that under the statute, a person who repeatedly engages in criminal conduct but is not caught could nonetheless establish good moral character; conversely, an incarcerated person could actually

have good moral character but is statutorily precluded from showing it. Plaintiff essentially contends that the INS should look to one's individual characteristics rather than to the general disqualifiers established by law, and generally complains of procedural unfairness in violation of the United States Constitution. Plaintiff also contends that he has good character, as evidenced by his ten-years' lease of an apartment at one address without jeopardizing any neighbor's life activity or the lessor's business; his ten-years' work at one place of employment without being laid off and without doing any physical or verbal violence to any coworker; and his ten year's status as a customer of utilities companies.

The Court broadly construes this as a procedural due process argument. Generously read, Plaintiff's claim appears to be that the preclusive effect of § 1101(f) violates his due process rights by creating an irrebuttable presumption that prevents an individualized assessment of his character. Irrebuttable presumptions are disfavored under the due process clause of the Fifth and Fourteen Amendments. *Vladis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). But the Supreme Court's irrebuttable presumption decisions do not deviate "substantially from the traditional tests for violations of the due process clause." *Malmed v. Thornburgh,* 621 F.2d 565, 576 (3d Cir. 1980).

Becoming a United States citizen is a privilege "to be given or withheld on such conditions as Congress sees fit." *Schneiderman v. United States,* 320 U.S. 118, 131, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943). Because no fundamental right is at stake, a court cannot strike down § 1101(f) "if the government 'identifies a legitimate state interest that the legislature could rationally conclude was served by the statute.' " *Nicholas v. Pa. State University,* 227 F.3d 133, 139 (3d Cir. 2000) (quoting *Alexander v. Whitman,* 114 F.3d 1392, 1403 (3d Cir. 1997)). As noted above, the "Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship," because citizenship status, "once granted, cannot lightly be taken away." *Berenyi,* 385 U.S. at 637.

It is rational for Congress to view persons with criminal convictions followed by lengthy incarcerations as poor candidates for United States citizenship. Enacting a statutory bar to the establishment of good moral character is a reasonable precaution to deter those unqualified for citizenship from seeking naturalization. Thus Plaintiff fails to make a plausible due process claim.

### D. Alternative Affirmative Relief

Plaintiff additionally requests in the alternative various forms of affirmative relief, including that the USCIS pay Plaintiff his expenses and damages for emotional distress, that the Kansas Attorney General complete or approve his application for crime victim's compensation, that the

Sedgwick County District Court remove the negative mark on his credit report, and that this Court compel USCIS to meet certain ethical obligations. *See* e.g., Dk. 1, p. 16; Dk, 11, p. 1. These requests are denied as beyond the Court's jurisdiction in this case and because they lack facial plausibility.

IT IS THEREFORE ORDERED that Defendant's motion to dismiss (Dk. 9) for failure to state a claim is granted.

IT IS FURTHER ORDERED that Plaintiff's pending motions relating to the filing of his briefs (Dk. 13, 15) are granted.

Dated this 13th day of August, 2013, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge